**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN DOE, by and through Legal Guardian,<br><br>        *Plaintiff,*<br><br>v.<br><br>ROCKWOOD SCHOOL DISTRICT and SPECIAL SCHOOL DISTRICT OF SAINT LOUIS COUNTY,<br><br>        *Defendants.* | Case No. 4:24-cv-395-MAL |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Defendants Rockwood School District and Special School District of Saint Louis County's joint motion to dismiss Plaintiff John Doe's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Doc. 20.  The motion is fully briefed.  Docs. 20, 21, 24, 27.  After careful consideration, the motion to dismiss is **GRANTED** without prejudice.  All claims brought by Doe in his First Amended Complaint, Doc. 17, are **dismissed**.  Doe may move for leave to amend as provided by the local rules of this Court within 14 days.  *See* E.D.Mo. L.R. 4.07.  If Doe does not move for leave to amend within 14 days, the dismissal shall become a dismissal with prejudice.

1

## FACTUAL BACKGROUND[1]

At the time of the incidents described in the First Amended Complaint, Doe was a boy with down syndrome and autism who attended Eureka High School within the Rockwood School District.  Doc. 17 at ¶¶ 1–2, 4; Doc. 17-1 at 10.  The Special School District of Saint Louis County also operates within Eureka High School.  Doc. 17 at ¶ 2.  Both Rockwood School District and the Special School District of Saint Louis County (collectively, the "School Districts") are public school districts in St. Louis County, Missouri.  *Id.* at ¶¶ 8–9.  While he was a student at Eureka High School, Doe was sexually abused by the school's janitor at least twice.  *Id.* at ¶¶ 2, 20, 24, 32.  Some of the abuse even happened in front of school employees.  *Id.* at ¶¶ 26, 30, 36.

After one incident, the janitor's sexual abuse of Doe was reported to administrators (although the Amended Complaint does not specify who).  *Id.* at ¶ 33.  But no disciplinary action was taken before the janitor abused Doe again two weeks later.  *Id.* at ¶¶ 33, 34.  That abuse was reported by a school employee to law enforcement and state social services, *id.* at ¶ 36, eventually leading to the janitor's conviction for sexual abuse and child molestation.  *Id.* at ¶¶ 23–24, 38.  Prior to the abuse being reported to law enforcement, Doe claims other school employees were aware of the janitor's behavior, *id.* at ¶ 31, and that "[s]ome, if not all" of these unidentified employees had the authority to put a stop to it.  *Id.* at ¶ 30.  But they refused to take appropriate actions to protect him from further abuse.  *Id.* at ¶ 32.

## PROCEDURAL BACKGROUND

Doe sued the School Districts in Missouri state court asserting several civil rights claims.  Doc. 7.  The School District removed the case to this Court on the basis

---

[1] The facts in this section are the well-pled facts in the Amended Complaint, which are assumed true at this point of the case while this Court rules on the motion to dismiss.  *See Hager v. Arkansas Dept. of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) ("Under Federal Rule of Civil Procedure 12(b)(6), the factual allegations in the complaint are accepted as true and viewed most favorably to the plaintiff.").

of federal question jurisdiction, Doc. 1, and then moved to dismiss Doe's claims under Federal Rule of Civil Procedure 12(b)(6)—failure to state a claim upon which relief can be granted.  Docs. 15, 16.

Doe then filed an amended complaint asserting four claims:

- Count I – sex discrimination in violation of Title IX
- Count II – violation of 42 U.S.C. § 1983
- Count III – Missouri Human Rights Act violations
- Count IV – retaliation in violation of Title IX

Doc. 17.  The School Districts again moved to dismiss all of Doe's claims under Federal Rule of Civil Procedure 12(b)(6).  Docs. 20, 21.

## LEGAL STANDARD

A complaint must present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Doe's complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint must allege sufficient facts that, taken as true, "state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted).

A claim is facially plausible when its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But if a claim fails to allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted.  *See Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).  Ultimately, evaluation of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

3

## DISCUSSION

### I.    Count I - Title IX sex discrimination.

The School Districts move for dismissal of Count I—Title IX sex discrimination—on the basis that Doe alleged no facts supporting a plausible claim that the School Districts had "actual notice" of Doe's sexual harassment. Doc. 21.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . ." 20 U.S.C. § 1681(a). A school district can be held liable under Title IX for sexual harassment of a student by a school employee. *K.C. v. Mayo*, 983 F.3d 365, 368 (8th Cir. 2020) (citing *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 74-75 (1992)). For a school district to be so liable, a plaintiff must show that the school district was "(1) deliberately indifferent (2) to known acts of discrimination (3) which occur[ed] under its control." *Ostrander v. Duggan*, 341 F.3d 745, 750 (8th Cir. 2003) (internal quotation marks omitted). Schools cannot be held liable for Title IX violations based on *respondeat superior*. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

To survive a motion to dismiss on this Count, Doe's First Amended Complaint must allege that a school official with authority to institute corrective measures had ***actual notice*** of his sexual harassment and was ***deliberately indifferent*** to the harassment once alerted to it. *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 456 (8th Cir. 2009); *P.H. v. Sch. Dist. of Kan. City, Mo.*, 265 F.3d 653, 661 (8th Cir. 2001). "[A] school district will only be liable for situations in which it exercises substantial control over both the harasser and the context in which the known harassment occurs." *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 782 (8th Cir. 2001) (internal quotation marks omitted). "Specifically, the school district's deliberate indifference must either directly cause the abuse to occur or make students vulnerable to such

4

abuse, and that abuse must take place in a context subject to the school district's control." *Id*. (internal quotation marks omitted).

### A. Actual notice.

Failure to plausibly plead the actual notice element of a Title IX discrimination claim is grounds for dismissal. *See, e.g., K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1058 (8th Cir. 2017) (upholding dismissal of Title IX discrimination claim for, in part, failure to plausibly plead that the school had actual knowledge of discrimination.). Doe does not dispute this. Instead, Doe argues that his claim should not be dismissed because he ***did*** plausibly plead that the School Districts had actual knowledge of his abuse. He asserts that he satisfied this requirement by alleging that his abuse "was reported to [the School District's] administrators with the authority to take disciplinary action against [the janitor] prior to his later sexual abuse of [Doe]." Doc. 17 at ¶ 33. The Court disagrees.

Doe has not sufficiently pled that an appropriate official had actual notice of his abuse to plausibly state a claim for relief under Title IX. "[L]egal conclusions, without any supporting factual allegations, are insufficient to survive a motion to dismiss." *Walker v. Barrett*, 650 F.3d 1198, 1209 (8th Cir. 2011) (citations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 662 (quoting *Twombly*, 550 U.S. at 555). Here, Doe has pled the legal conclusion that appropriate school officials had actual notice of Doe's abuse without providing sufficient factual allegations that support that legal conclusion. Doe does not say who reported to whom, their respective roles, when the report was made, or what information was included in the report. The lack of any factual material supporting this allegation makes it wholly conclusory and therefore insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678; *K.T. v. Culver-Stockton Coll.*, No. 4:16-cv-165-CAS, 2016 WL 4243965, at *8 (E.D. Mo. Aug. 11, 2016), *aff'd*, 865 F.3d 1054 (8th Cir. 2017) ("[C]onclusory allegations are not sufficient to plead actual knowledge for purposes of stating a claim under Title IX . . .").

In fact, the Eighth Circuit recently affirmed dismissal in a case with similar vague allegations by a *pro se* plaintiff. In *Mungai v. Univ. of Minnesota*, 141 F.4th 959, 965 (8th Cir. 2025), the Eighth Circuit held that indeterminate allegations that unidentified school officials had knowledge of the plaintiff's harassment fails to plausibly allege that a person with sufficient authority had actual notice of the harassment.[2] Specifically, "fail[ure] to allege the identity of the staff member, whether the staff member was an official with authority to take corrective action, the content of the report to the staff member, when he made the report, and any actions taken following the report" made the allegations too conclusory to survive a motion to dismiss. *Id.*

So too here. Doe has failed to allege facts showing who his abuse was reported to, the content of the report, when the report was made, and any actions taken following the report. And while Doe claims his abuse was reported to "administrators with the authority to take disciplinary action against [the janitor]," *id.* at ¶ 33, this is nothing more than a bare *legal conclusion,* not a *factual allegation.* That is not enough on a motion to dismiss. *Iqbal,* 556 U.S. at 678. Without more "factual enhancement," the Court is not able "to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.* As such, Doe has failed to state a claim for relief under Title IX that is plausible on its face. *Id.*

Doe leans on cases outside of the Eighth Circuit to argue the contrary, to no avail. Eighth Circuit precedent binds this Court, *see Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003) (district courts are "bound . . . to apply the precedent of the [the Eighth] Circuit"), and the other circuits' precedent is not persuasive. For instance, Doe claims that in *Junhao Su v. Eastern Illinois University*, 565 Fed. Appx.

---

[2] Though *Mungai* is a Title VI case, both Title VI and Title IX require "actual notice" for third party harassment claims. *Mungai*, 141 F.4th at 964–65 (adopting Title IX deliberate-indifference standard, which requires plaintiff "provide notice of the harassment to 'an appropriate person,' which means 'an official of the recipient entity with authority to take corrective action to end the discrimination'") (quoting *Gebser*, 524 U.S. at 290).

520 (7th Cir. 2014), the Seventh Circuit held that a *pro se* plaintiff in a Title VI discrimination case "was not . . . required to provide factual details as to who had actual knowledge of the discrimination or who had authority to address the discrimination" to survive a motion to dismiss. Doc. 24 at 7 (citing *Junhao*, 565 Fed. Appx. at 521–22). But Doe is not a *pro se* plaintiff, and the *Junhao* complaint contained much more detailed allegations than those Doe alleged here. For example, the *Junhao* plaintiff provided several factual allegations supporting the theory that a university denied him admission after the university became aware that he had brought racial discrimination allegations by his supervisors at his previous university. *Junhao*, 565 Fed. Appx. at 520. The *Junhao* plaintiff also provided factual allegations supporting his claim that the university rejected him because of his race and national origin by stating that the assistant dean for admissions told him he "should go to another country and start a new life" after the plaintiff told him about his previous discrimination complaints. *Id.*

Doe's other cited case—*Doe v. School Board of Miami-Dade County*, 403 F. Supp. 3d 1241 (S.D. Fla. 2019) (*Miami-Dade*)—actually illustrates the deficiencies of Doe's pleading here. In *Miami-Dade*, the plaintiff's complaint included key factual material, such as who reported sexual harassment (plaintiff, plaintiff's friends), to whom (principal, school security guard, and assistant principal), and when. *Id.* at 1248–49. Doe's complaint contains none of this information.

Perhaps recognizing the deficiency of his First Amended Complaint, Doe asks the Court to allow the claim to proceed to discovery anyway so that the specifics he failed to plead "can be ferreted out." Doc. 24 at 9 (quoting *Miami-Dade*, 403 F. Supp. 3d at 1259). But Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679. Because Doe has merely alleged a **conclusion** that an appropriate person had notice, Count I must be dismissed. *See Walker*, 650 F.3d at 1209.

**B. Other grounds for Doe's Title IX discrimination claim.**

The School Districts argue that Doe cannot establish a Title IX violation by alleging that they failed to adopt Title IX policies or to implement Title IX training. Doc. 21 at 7. Doe agrees that those allegations cannot serve as an independent basis for a claim under Title IX. Doc. 24 at 11. Therefore, the Court does not consider such a theory.

The School Districts also argue that Doe's Title IX claim should be dismissed to the extent it asserts a claim for discrimination on the basis of disability because Title IX does not provide a cause of action for disability discrimination. Doc. 21 at 8. Doe does not dispute this. Doc. 24 at 11. Thus, this Court does not consider such a theory.

Because Doe has not plausibly stated a claim upon which relief can be granted under Title IX, the Court will dismiss Count I without prejudice.

## II.   Disability discrimination claim.

Doe argues that his Amended Complaint states a claim for disability discrimination under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12134, and § 504 of the Rehabilitation Act of 1973 ("RA"), 34 C.F.R. 104 *et seq*. Doc. 24 at 1, n.1.

**A. The Court construes Doe's Amended Complaint as attempting to state a claim under Title II of the ADA and § 504 of the Rehabilitation Act.**

Doe alleged disability discrimination in his First Amended Complaint, Doc. 17, but he did not expressly allege that he had a disability discrimination claim under Title II of the ADA or § 504 of the RA. Rather, he claimed to state a claim under Title IX. Doe asserts his alternative legal theories for the first time in his opposition to the School District's motion to dismiss. *Compare* Doc. 17 at 8–13 (Title IX claim) *with* Doc. 24 at 1, n.1 (ADA and RA claims).

8

The Court construes Doe's disability discrimination claim as arising under Title II of the ADA and § 504 of the RA because federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014); *id.* at 12 (citing 5 Wright & Miller, Fed. Prac, & Proc. § 1219, 277–78 (3d ed. 2004) ("[I]t is unnecessary to set out a legal theory for the plaintiff's claim for relief.")).

Nor should these allegations be dismissed on the basis that they are new claims. The School Districts have been on notice of the disability discrimination claim at least since Doe filed his initial petition in state court, *see* Doc. 7 at ¶¶ 1, 21, 37, 44–47, 50–51, 55, 61, 63d, 81, and Doe has not introduced any new factual allegations for how the School Districts harmed him. That so, Doe's disability discrimination claim is the same claim that the School Districts have been aware of since this case was filed.

### B. Doe did not fail to exhaust his administrative remedies.

The School Districts argue that Doe's discrimination claim should be dismissed because Doe failed to exhaust administrative remedies available under the Individuals with Disabilities Education Act (IDEA), on account of which, the School Districts argue, the Court lacks subject matter jurisdiction. Doc. 27 at 5–6. Not so.

IDEA ensures that "all children with disabilities have available to them a free appropriate public education . . . designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" 20 U.S.C. § 1400(d)(1)(A). The statute requires state educational agencies to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education[.]" 20 U.S.C. § 1415(a).

Though students may bring disability discrimination claims under the ADA and the RA, they must first exhaust administrative remedies if they "seek[] relief that is also available under [the IDEA]." 20 U.S.C. § 1415(l). The exhaustion requirement

applies only if plaintiffs seek relief for the denial of a free appropriate public educa-tion. *See Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 168 (2017). Exhaustion is not required if plaintiffs are "seek[ing] relief for simple discrimination[.]" *Id.* at 171. To determine whether a complaint seeks redress for the denial of a free appropriate pub-lic education, the courts "look to the substance, or gravamen, of the plaintiff's com-plaint." *Id.* at 165.

The gravamen of Doe's claim is not the denial of a "free appropriate public education" ensured by the IDEA. The main thrust of the disability discrimination claim in the Amended Complaint is that Doe was sexually abused because of his dis-ability and that the School Districts—though consciously aware that his disability made him more susceptible to sexual abuse—failed to take appropriate action to pre-vent such abuse. Doc. 17 at ¶¶ 21, 39–41. It was only because of this sexual abuse that Doe allegedly suffered damages, including physical pain, suffering, emotional distress, and lack of general educational benefits. *Id.* at ¶¶ 42–44. Nothing in the Amended Complaint suggests that Doe was being directly denied a free public edu-cation appropriate for his disability. Thus, Doe was not required to exhaust the ad-ministrative remedies available under the IDEA for the Court to have subject matter jurisdiction over this claim.

**C. The disability discrimination claim is dismissed for failure to plau-sibly allege that an appropriate person had actual knowledge of the abuse.**

Though Doe was not required to exhaust administrative remedies under the IDEA, this Court still must dismiss Doe's disability discrimination claim for failure to state a claim.

Doe puts forward two theories of liability for his disability discrimination claims under the ADA and the RA—direct liability and vicarious liability. Doc. 24 at 11–12. Starting with direct liability, Doe asserts that "under either statute [the ADA or the RA] a public entity may be held '***directly*** liable for its own deliberate indiffer-ence . . . if an [employee] had actual knowledge of [disability] discrimination and the

requisite authority to institute corrective measures, and yet that [employee] failed to act[.]' " *Id.* at 12 (quoting *Hooper v. City of St. Paul*, 2019 WL 4015443, at *8 (D. Minn. 2019) (emphasis in original)).  But even if that is true, as already discussed, Doe has failed to plausibly allege that an employee of the School Districts with the requisite authority to institute corrective measures had actual knowledge of Doe's abuse.  *See supra* at 4–5.

Next, Doe suggests that the School Districts are vicariously liable under both the ADA and the RA for the deliberately indifferent conduct of their employees.  Doc. 24 at 12.  Acknowledging that "'[n]either the Supreme Court nor the Eighth Circuit has directly addressed the question," *see* Doc. 24 at 12 (citing *Hooper*, 2019 WL 4015443, at *9), Doe argues that "[b]ecause a theory of vicarious liability . . . has not been foreclosed by the Eighth Circuit," he has "state[d] a plausible claim for [the School Districts'] vicarious liability based on their employees' tortious conduct."  Doc. 24 at 13, n. 9.  Not so.[3]

Courts in the Eighth Circuit, as Doe's own authority shows, do not recognize vicarious liability under Title II of the ADA nor under the RA.  *See Hooper*, 2019 WL 4015443, at *9 (rejecting vicarious liability under both statutes); *see also Casey v. Cooper*, No. 4:23-cv-206 JMB, 2024 WL 1856176, at *5 (E.D. Mo. Apr. 29, 2024) (finding that the Eighth Circuit would "hold that vicarious liability is not available in Title II cases.").  The Court agrees with these cases and holds that vicarious liability is available neither under Title II of the ADA nor under the RA.

A close comparison of the ADA's separate titles suggests that Congress contemplated vicarious liability for employers but not public entities.  And for all relevant purposes here, the language of the RA is materially the same as the language of

---

[3] Multiple Circuits have held that a public entity can be held vicariously liable.  *See, e.g., Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574–75 (5th Cir. 2002); *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001); *Rosen v. Montgomery Cty., Md.*, 121 F.3d 154, 156 n.2 and 157 n.3 (4th Cir. 1997).  The Court respectfully disagrees with those courts.  The text and history of these statutes make clear that the School District cannot be held vicariously liable for the actions of its employee under Title II of the ADA or the RA.

Title II of the ADA.   *Compare* 29 U.S.C. § 794(a)–(b) (RA) *with* 42 U.S.C. §§ 12131(1)(A)–(B), 12132 (ADA Title II).  Thus, textual analysis of the ADA sheds equivalent light on the meaning of the RA.  In fact, the statutes are so similar (except for the federal funding requirement) that they are analyzed under the same framework, and the Eighth Circuit has held that certain of its "decisions interpreting either the ADA or the [RA] are applicable and interchangeable to claims under each statute." *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013) (quotation marks omitted).  Here, the ADA's text shows that public entities cannot be held vicariously liable under either statute.

The ADA is split amongst different titles, each setting up distinct remedial regimes addressing disability discrimination by different types of actors.  For example, Title I applies to employers, and Title II applies to public entities.  42 U.S.C. § 12112(a) (Title I — employers); 42 U.S.C. § 12132 (Title II—public entities).  But while the text of Title I contemplates vicarious liability, Title II does not.

Title I defines "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees . . . **and any agent** of such person . . . " 42 U.S.C. § 12111(5)(A) (emphasis added), but Title II defines "public entity" (in relevant part) as only "any department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C. § 12131(1)(A)–(B).  Nowhere does the text of Title II (or the RA) include "any agent" of a public entity in its remedial regime like Title I does in the context of an employer.  *Id.*; 29 U.S.C. § 794(b) (the RA's definition of "Program or activity").  That is critical because Title I's "and any agent" language contemplates vicarious liability for employers.  *See U.S. E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995) (the "reason for the 'and any agent' language in the definition of 'employer' was to ensure that courts would impose *respondeat superior* liability upon employers for the acts of their agents") (citation omitted).  The conspicuous absence of the same "and any agent" language from Title II of the ADA (and the RA) suggests that Congress intended a

12

different remedial scheme for public entities—one without vicarious liability. Therefore, the text of the ADA and the RA suggests that public entities are not subject to vicarious liability under Title II of the ADA or the RA.

The Supreme Court's decision in *Gebser v. Lago Independent School District,* 524 U.S. 274 (1998), suggests the same result. Title II of the ADA incorporates "[t]he remedies, procedures, and rights set forth in [the RA]," 42 U.S.C. § 12133, which in turn incorporates the "remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964," 29 U.S.C. § 794a(a)(2). *See Barnes v. Gorman,* 536 U.S. 181, 185 (2002) ("[T]he remedies for violations of § 202 of the ADA and § 504 of the Rehabilitation Act are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964."). And the Supreme Court has implied that Title VI of the Civil Rights Act of 1964 does not permit *respondeat superior* or constructive-notice liability. *See Gebser,* 524 U.S. at 285–86 (holding no *respondeat superior* liability for school district under Title IX and suggesting that Title IX was modeled after and parallel to Title VI of the Civil Rights Act of 1964); *see also Ingram v. Kubik,* 30 F.4th 1241, 1258 (11th Cir. 2022) (concluding no vicarious liability under Title VI on basis of *Gebser*'s holding of no vicarious liability under Title IX); *Jones v. City of Detroit,* 20 F.4th 1117, 1119–20 (6th Cir. 2021) (same); *see also Barnes,* 536 U.S. at 185 ("[T]he [Supreme] Court has interpreted Title IX consistently with Title VI."). So if Title II of the ADA and the RA contain the same remedies, procedures, and rights as Title VI, then Title II of the ADA and the RA also do not permit vicarious liability. *See Ingram,* 30 F.4th at 1258 (Pryor, C.J., holding the same); *Jones v. City of Detroit,* 20 F.4th at 1119–21 (Sutton, C.J., holding the same).

Because Doe fails to plausibly allege that the School Districts are directly liable for disability discrimination under the ADA or the RA, and because the Court concludes that vicarious liability is not available under either statute, Doe has failed to state a claim for disability discrimination upon which relief can be granted. Doe's disability discrimination claim is dismissed without prejudice. *See Iqbal,* 556 U.S. at

13

678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (quotation marks omitted).  Doe may move for leave to amend as provided by the local rules of this Court within 14 days.  *See* E.D.Mo. L.R. 4.07.  If Doe does not move for leave to amend within 14 days, the dismissal shall become a dismissal with prejudice.

### III.   Count II - Claims for relief under 42 U.S.C. § 1983

The School Districts also move to dismiss Count II of Doe's complaint, which asserts a claim under 42 U.S.C. § 1983 for failure to state a claim.  Doc. 21 at 8–17.  The statute 42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, sit in equity, or other proper proceeding for redress . . . .

In this way, § 1983 provides a private right of action allowing individuals to sue state officials who, under color of state law, subject them to the deprivation of any rights, privileges or immunities secured by federal law.  *Turning Point USA at Arkansas State University v. Rhodes*, 973 F.3d 868, 874 (8th Cir. 2020).

Where, as here, plaintiffs seek to impose liability for violations of a constitutional right on a local government body via § 1983, they "must show that there is an official policy or a widespread custom or practice of unconstitutional conduct that caused the deprivation of a constitutional right."  *Marksmeier v. Davie*, 622 F.3d 896, 902 (8th Cir. 2010) (citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690-91 (1978)); *see also Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181-82 (8th Cir. 1998) ("For the School District to be liable, [plaintiff] must prove that the School District had an official policy or widespread custom that violated the law and caused his injury.").  The relevant custom or practice of unconstitutional conduct must be "so widespread as to have the force of law." *Bd. of Cnty. Commrs. v. Brown*, 520 U.S. 397, 404 (1997) (citing *Monell*, 436 U.S. at 690).

There is no dispute that Doe suffered a deprivation of his constitutional rights. "It is well-settled that the Due Process Clause of the Fourteenth Amendment protects the liberty interest of a child in public school from sexual abuse." *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 778 (8th Cir. 2001). Thus, the question is whether Doe sufficiently alleged that either an official policy or widespread custom of the School Districts caused this deprivation to adequately state a claim under § 1983.

The Court first considers whether the Amended Complaint sufficiently alleges that an official School District policy deprived Doe of his constitutional rights. Then the Court considers whether the Amended Complaint sufficiently alleges that a widespread School District custom deprived Doe of his constitutional rights. If Doe has failed to sufficiently allege both, his claim must be dismissed.

## A. Policy

Doe claims that he sufficiently alleged a § 1983 claim because the Amended Complaint states that the School Districts' "administrators" failed to take disciplinary action against the perpetrator of Doe's abuse after learning about it. The offending "official school district policy," he argues, was those administrators' deliberate decision to not take disciplinary action against the perpetrator. Doc. 24 at 16. For the purposes of a § 1983 claim, this is insufficient to allege that an official policy caused the deprivation of Doe's constitutional rights.

"The "[Eighth Circuit] does not use the terms 'policy' or 'custom' interchangeably." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id.* Doe has not sufficiently alleged that a person with such authority caused his injury. Though Doe alleged that the "administrators" made the deliberate decision to not discipline the perpetrator of his abuse and had "the authority to take disciplinary action," he did not allege that the administrators had *final, unreviewable authority* to discipline the perpetrator. Nor does he provide any factual material demonstrating they had

15

such final, unreviewable authority. The allegations on this point in his Amended Complaint are merely conclusory; they do not include facts, and they do not survive a motion to dismiss, much like those in Doe's Title IX discrimination claim. Because the Amended Complaint fails to state a claim under the "policy" prong of § 1983, the Court next considers whether the Amended Complaint states a claim under the custom prong of § 1983.

### B. Custom

The Amended Complaint alleges a § 1983 claim under the custom prong. Under the custom umbrella, the Amended Complaint asserts two theories of liability: (1) failure to receive, investigate, or act on complaints of unconstitutional violations, and (2) failure to train employees to report and prevent sexual abuse of students. Doc. 17 at 14. Both theories are viable ways to hold school districts liable for civil rights violations. *Plamp v. Mitchell Sch. Dist. No. 17-2,* 565 F.3d 450, 459 (8th Cir. 2009) ("A school district can be liable for civil-rights violations under § 1983 either for failing to receive, investigate, and act upon complaints of unconstitutional conduct or for failing to train its employees to prevent or terminate unconstitutional conduct.") (citation modified). The Court considers whether Doe sufficiently alleged either type of claim.

### 1. Failure-to-act.

A failure-to-act claim requires a plaintiff to show that (1) there was a "continuing, widespread, persistent pattern of unconstitutional misconduct," (2) the school's "policymaking officials" were deliberately indifferent to or tacitly authorized such conduct after gaining knowledge of it, and (3) the plaintiff was "injured by acts pursuant to the [school's] custom." *Thelma D. v. Bd. of Educ., City of St. Louis,* 934 F.2d 929, 932-33 (8th Cir. 1991); *see also Plamp,* 565 F.3d at 459.

The Amended Complaint fails to allege facts that satisfy the second element— deliberate indifference or tacit authorization of conduct after gaining knowledge of it. For a school's policymaker to be deliberately indifferent to unconstitutional conduct,

16

he must have knowledge of the conduct. *Thelma D.*, 934 F.2d at 933 (requiring notice). Policymakers are individuals with the authority to make decisions on behalf of the institution that are final and unreviewable. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 738 (1989).

Here, Doe does not allege that a policymaker had actual knowledge of the conduct. The Amended Complaint alleges only that "administrators and employees with the authority to take disciplinary action" had actual knowledge of his abuse. Doc. 17 at ¶ 77. The Amended Complaint does not explain who these administrators and employees were or whether they had the final authority of a policymaker. Without those facts, the Court cannot reasonably infer that a school policymaker had notice of Doe's abuse rather than a lower-level employee. Additionally, Doe's allegations that administrators had notice of his abuse are wholly conclusory. The Amended Complaint contains no facts supporting this conclusion, which is not enough to survive a motion to dismiss.

Though knowledge can be constructively imputed to policymakers, such knowledge cannot be imputed without showing that the unconstitutional conduct was "so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of [it]." *Thelma D.*, 934 F.2d at 933. One employee's constitutional violations "alone, as a matter of law, cannot be deemed to constitute widespread misconduct." *Id.* at 933–34. Because Doe's complaint alleges only that ***one*** person deprived him of his constitutional rights, the Court cannot impute knowledge to any policymaker. *See id.*

The Amended Complaint contains no facts showing an appropriate person under § 1983 had knowledge of his abuse and such knowledge cannot be imputed as a matter of law. Therefore, Doe has not sufficiently alleged that a school policymaking official had the knowledge required to be deliberately indifferent under § 1983. Because "[n]otice is the touchstone of deliberate indifference in the context of § 1983 municipal liability[,]" *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8th

17

Cir. 2013), Doe's failure to sufficiently allege that a school policymaker had knowledge of his abuse means that his claim must be dismissed.

The Court does not need to address the other grounds that the School Districts argue justify dismissal. The Court dismisses Doe's failure-to-act claim under § 1983 without prejudice.

### 2. Failure to train.

To establish a failure-to-train theory, a plaintiff must show "that the [School Districts'] failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of the students." *Thelma D.*, 934 F.2d at 934 (internal quotation marks omitted). The School Districts must have "notice [that their] procedures were inadequate and likely to result in a violation of constitutional rights." *Id.* at 934; *see also P.H.*, 265 F.3d at 660; *see also Atkinson*, 709 F.3d at 1216. A violation can occur without actual notice "where failure to train officers or employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious." *Thelma D.*, 934 F.2d at 934.

Doe's failure-to-train-claim fails to state a claim because, again, he offers nothing but conclusory statements without factual allegations plausibly showing entitlement to relief. Doc. 17 at ¶ 71 ("). In his response to the motion to dismiss, Doe argues that he did allege facts sufficient facts supporting a failureto-train claim. Doc. 24 at 18–19. For example, he says he alleged that the School Districts did not train employees to act upon reports of sexual abuse, did not train employees to act upon receipt of evidence of sexual abuse of students, and did not train employees to investigate reports or evidence of sexual abuse of students. *Id.* (citing Doc. 17 at ¶¶ 68, 69, 70.) But these allegations say only—in conclusory fashion—that the School Districts "failed to act" or "failed to investigate." Doc. 17 at ¶¶ 68, 69, 70. None of them say anything about ***training.*** And even if they were about training, they still fail to support a plausible failure-to-train claim because they are wholly conclusory.

18

Doe's allegations about training are also wholly conclusory. *See id.* at ¶ 71 (alleging that the School Districts "failed to *adequately* train [their] employees regarding sexual abuse of students, including sexual abuse of students by employees (emphasis added)); ¶ 61(h) (alleging that the School Districts "[f]ail[ed] to develop or adopt policies and procedures to *properly* address complaints, reports, or evidence of employee-against-student sexual harassment . . ." (emphasis added)); ¶ 61(i) (alleging that the School Districts "[f]ail[ed] to adopt policies regarding *prompt and equitable* grievance procedures and investigation of reports, complaints, or evidence of employee-against-student sexual harassment . . ." (emphasis added)); ¶ 61(j) (alleging that the School Districts "[f]ail[e]d to provide policies, procedures, or training for [the School Districts] administrators, employees, students, and students' parents about sexual harassment . . ."). The amended complaint alleges no facts to back any of this up. The Court is left with only threadbare assertions that the School Districts' training was inadequate.

Missing from his complaint are critical factual allegations showing how the School Districts' training failed to meet the applicable standard. Doe's Amended Complaint omits facts showing **how** the training was inadequate, **how** the School Districts were deliberately indifferent in adopting their training practices, and **how** the allegedly inadequate training caused Doe's injuries. Without those factual allegations, it is not possible for the Court to reasonably infer that the School Districts failed to train its employees in a relevant respect. *See, e.g., Frischknecht v. Reeds Spring R-IV Sch. Dist.*, 2020 WL 7395143, at *3 (W.D. Mo. Dec. 16, 2020) (dismissing failure-to-train-claim because it "merely allege[d] . . . inadequate training, yet provide[d] no factual allegations as to how such training was inadequate; how the [school district] was deliberately indifferent in adopting said practices; or how such deficient training actually caused [the plaintiffs'] injuries").

There also are no facts showing that the School Districts had notice of their training's inadequacies (actual or implied). Doe's conclusory statements do not contain enough factual material to plausibly show that anyone actually had notice of

19

training inadequacies, or more specifically, whether a person with final policymaking authority (such as a superintendent or board member) had knowledge of such inadequacies.

Doe's Amended Complaint likewise fails to plead facts that imply notice of training deficiencies. There are two ways that Doe can establish such notice. First, "notice may be implied where failure to train officers or employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious." *Thelma D.*, 934 F.2d at 934. But as Doe alleges himself, the School Districts did have sexual harassment policies and reporting procedures in place. *See* Doc. 17 ¶ 72. Thus, the Court does not "need to decide whether the need to develop policies and employee training programs addressing child abuse falls into this first notice category[.]" *Thelma D.*, 934 F.2d at 934.

Second, notice can be implied if a pattern of violations put the School Districts on notice that the school's response to regularly occurring situations was insufficient to prevent the unconstitutional conduct at issue. *Id.* at 935 (cited by *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 462 (8th Cir. 2009)). But the School Districts "simply cannot be said to have acquiesced in something of which they had no knowledge . . ." *Id.* Doe has not plausibly alleged that any person with final policymaking authority had notice of the unconstitutional conduct, much less a regularly occurring pattern of such unconstitutional conduct. *See supra* at 19.

Thus, notice of training deficiencies cannot be implied on the face of Doe's Amended Complaint. Accordingly, Doe fails to state a failure-to-train claim under § 1983, so the Court dismisses it without prejudice.

## IV.   **Count IV - Title IX retaliation claim.**

Doe also asserts a Title IX retaliation claim, which the School Districts move to dismiss on the grounds that Doe failed to sufficiently plead (among other things)

that there was causal connection between the alleged protected activity and an adverse action. Doc. 21 at 23–24. This Court agrees with the School Districts and dismisses the Title IX retaliation claim without prejudice.

The Eighth Circuit has "never specifically articulated what a plaintiff must plead to establish a cause of action for retaliation under Title IX." *Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1203 (8th Cir. 2021). But, at minimum, a plaintiff must plead "(1) the plaintiff partook in protected activity; (2) the plaintiff suffered an adverse action; and (3) a causal connection exists between the two." *Id.* at 1203–04 (leaving open whether plaintiff must also "demonstrate…defendant knew of the protected activity").

Doe fails to plead facts that satisfy element (3)—a causal connection between the plaintiff partaking in a protected activity and suffering an adverse action. Nothing in Doe's Amended Complaint connects Doe's actively complaining of or opposing alleged discrimination on the basis of sex under Title IX (the alleged protected activity, *see* Doc. 24 at 22–23) to any particular School District adverse action. Nothing shows that—but-for his filing with the Missouri Human Rights Commission—Doe and his family would not have been treated with hostility and flippancy by the Schools. There simply are no factual allegations in Doe's complaint showing he suffered an adverse action because he engaged in protected activity. Thus, this Court dismisses Doe's Title IX retaliation claim (Count IV) without prejudice.

## V.    Count III – Missouri Human Rights Act Violations

In Count III of his Amended Complaint, Doe requests relief for discrimination and harassment on the basis of his sex and disability under the Missouri Human Rights Act (Mo. Rev. Stat. § 213.010–.137). Because this suit is in federal court based on Federal Question jurisdiction, and there are no federal questions left, this Court dismisses Count III—a state-law claim—without prejudice for lack of subject-matter

jurisdiction.  *See* 28 U.S.C. § 1367(c)(3) (permitting district courts to decline to exercise supplemental jurisdiction over a claim when "the district court has dismissed all claims over which it has original jurisdiction").

\*          \*          \*

### ORDER

The Court dismisses all claims in Doe's First Amended Complaint (Doc. 17) without prejudice.  Doe may move for leave to amend as provided by the local rules of this Court.  *See* E.D.Mo. L.R. 4.07.  If Doe does not move for leave to amend within 14 days of the date of this Order, the dismissal shall become a dismissal with prejudice.

**So Ordered,**

This 7th day of April, 2026.

*Maria A. Lanahan*

MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE

22