**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN DOE,<br>*By and through Legal Guardian,*<br><br>Plaintiff,<br>v.<br><br>ROCKWOOD SCHOOL DISTRICT,<br>&<br>SPECIAL SCHOOL DISTRICT OF SAINT LOUIS COUNTY,<br><br>Defendants. | Case No.: 4:24-cv-00395-MAL<br><br>**JURY TRIAL DEMANDED** |

**SECOND AMENDED COMPLAINT**

COMES NOW Plaintiff John Doe ("Plaintiff"), by and through his duly appointed Legal Guardian and his attorneys, pursuant to Rule 15 of the Federal Rules of Civil Procedure, and for his Second Amended Complaint for damages against Defendants states as follows:

***INTRODUCTION***

1. This cause of action is related to the physical abuse, right to bodily integrity violations, sexual abuse, sexual harassment, and/or sexual discrimination, and disability discrimination of Plaintiff in the 2021-2022 school year while he was a male minor child and student in the Rockwood School District and Special School District of Saint Louis County.

2. The abuse of Plaintiff was perpetrated by an employee("Perpetrator", "Robert Smith", or "Smith") at Eureka High School in the Rockwood School District and where the Special School District of Saint Louis County also operates.
3. Perpetrator was a state actor at the time of these incidents.
4. Plaintiff is a male with Down Syndrome and Autism. Plaintiff is a resident of Missouri. Plaintiff brings this action through his previously appointed legal guardian.
5. Plaintiff's disabilities, namely Down Syndrome, impairs and substantially limits his ability to perform day-to-day activities and major life activities.
6. Plaintiff's disabilities significantly impair his ability to communicate, self-advocate and defend himself against abuse, harassment, discrimination and violations of his person.
7. Apart from Plaintiff being a minor child at the time of these incidents, Plaintiff was not capable of consenting to sexual conduct due to his age and his disability/disabilities.
8. Defendant Rockwood School District ("Rockwood") is a public school district located in St. Louis County, Missouri.
9. Defendant Special School District of Saint Louis County ("SSD") is a public school district operating in St. Louis County, Missouri.
10. SSD and Rockwood operate numerous public accommodations, including public school districts, and by providing public education.
11. The events herein occurred in St. Louis County, Missouri, which is in the Eastern District of Missouri.

12. The physical abuse, violations of bodily integrity rights, sexual abuse, sexual harassment, discrimination on the basis of sex and disabilities, and acts described herein all occurred at Rockwood and SSD, or at accommodations and/or premises operated or controlled by them. Both Rockwood and SSD had control over the environments where the abuse occurred given the abuse all occurred at Eureka High School and during school activities and events when Robert Smith was working or attending in his role as an employee and agent of Defendants.
13. Plaintiff was first abused and injured in St. Louis County, Missouri, which is in the Eastern District of Missouri.
14. At all times relevant hereto, Plaintiff was a student at Rockwood and SSD.
15. At all times relevant hereto, Defendants Rockwood, SSD, and the Perpetrator were state actors operating under the color of law.
16. Perpetrator was an employee of Rockwood and also performed supervision and other services for SSD, both within the SSD classrooms and in other areas of the school.
17. At all times herein, Rockwood and SSD were/are the recipient of federal financial assistance and were engaged in providing educational programs and activities.
18. By accepting and receiving federal financial assistance, Rockwood and SSD must comply with Title IX of the Education Amendments of 1972 (20 U.S.C. §§ 1681-1688) (hereinafter referred to as "Title IX"), as well as other anti-discrimination laws such as the §504 of the Rehabilitation Act of 1973, 34 C.F.R. 104 *et seq.*, ("RA") and Title II II of the American with Disabilities Act, 42 U.S.C. §§12131-12134 ("ADA").

19. Title IX prohibits discrimination based on sex and/or disability in an educational institution and/or educational program that is receiving federal financial assistance.

20. Generally, the RA and ADA prohibit Defendants from engaging in discrimination on the basis of a person's disabilities in connection with their public accommodations and/or services.

21. Under the facts and circumstances of this specific matter, including these specific Defendants and their relation to the Perpetrator, the following of Defendants' employees/agents/officials constituted appropriate persons possessing the authority to institute corrective measures in response to the type of constitutional violations, sexual harassment, and child sexual abuse that occurred in this case. This authority included the final, unreviewable authority to discipline the perpetrator (Robert Smith) and to stop child abuse and stop sexual abuse of students:

    a. Defendants' building principals and administrators at Eureka High School, including SSD's Christine Ude, and Rockwood's Corey Sink, Jennifer Strauser, and Sarah Goodman;

    b. Defendants' Superintendents, including Tim Ricker and Elizabeth Keenan;

    c. Defendants' Directors, including Directors of Student Services and Directors of Special Education, including Carmen Harris and Terry Harris;

    d. Defendants' Coordinators, including Coordinators of Safety and Security (including Ty Dennis);

e. Rockwood's Human Resources ("HR") Department officials/personnel, including HR Coordinators (including Stacy Neely), HR Specialists (including Abby Otten), Executives, and Directors;

f. SSD's teachers and personnel at Eureka High School (especially those in control of the classroom in which Plaintiff was attending SSD class), including Jennifer Ruocco, and Tabatha Hoffmeyer; and

g. Rockwood's Custodial Supervisor (Joseph Trimberger) and Lead Custodian (Terry Clifton) who acted as, and were empowered by, Rockwood as supervisors over all the custodians, including perpetrator Robert Smith.

Such persons shall be individually and collectively referred to hereafter as "Appropriate Persons."

22. The Appropriate Persons' authority to institute corrective measures was authorized by Defendants' written policies as well as Defendants' practices, including Defendants' policies and practices permitting superiors, such as superintendents, principals, and supervisors, to delegate their given authority in situations applicable to this case to a subordinate (a delegee). The Appropriate Persons had final and unreviewable authority to discipline the Perpetrator (Robert Smith), stop child abuse, stop sexual abuse of students, and stop bodily-integrity violations of students, as evidenced by the policies and practices of Defendants as it pertains to Smith and this matter. The Appropriate Persons could (and did) direct and control the conduct of Smith, including issuing directives to Smith, engaging in discipline

of Smith, and controlling Smith's roles, duties, and actions. The Appropriate Persons had the power to reprimand, discipline, suspend, and/or terminate Smith and employees of his status and also had the power to immediately take action to stop physical and sexual abuse of children. As an example, the Custodial Supervisor and an HR Specialist handled a disciplinary matter involving Smith and his inappropriate conduct with a student ("Student A" – detailed more thoroughly later in this Complaint) to the point where they were the individuals who chose the nature of the discipline, characterized the nature of the matter/incident, and signed the resulting disciplinary notice. All this evidences their disciplinary authority over Smith and ability to take final corrective measures. As an additional example, SSD teachers in control of Plaintiff's SSD classroom directed Smith's involvement with SSD students (including Plaintiff), issued directives to Smith that he was required to follow, delegated to Smith the responsibility for supervision and care of SSD students and had authority to determine whether Smith was or was not physically present in the SSD classroom they controlled. As an additional example, the Rockwood HR Department officials/personnel made numerous final and unreviewable decisions regarding Smith, including an October 2021 disciplinary matter handled by them regarding Smith's inappropriate conduct with a student.

23. As to SSD employees/personnel/officials that were positioned at Rockwood, including Eureka High School, such persons were also agents and state actors of Rockwood as evidenced by Rockwood and Eureka High School including such

persons on Rockwood's website staff directory and in their staff directory as staff of Rockwood and Eureka High School.

24. Even though technically Smith's formal employment agreement was with Rockwood, Smith was an agent and state actor of both Defendants as evidenced by serving both Defendants at Eureka High School, taking directions, instructions, orders, and directives from both Defendants at Eureka High School, as well as Defendants' employees being able to direct and control his behavior, his conduct, his duties, and to reprimand/discipline him.

25. Defendants were aware of Plaintiff's disabilities through their interactions with him, his involvement with SSD (including his Individualized Educational Programs), receipt of his medical records, communications with healthcare professionals, and communications with Defendants' employees who had expertise in disabilities.

26. In Fall 2021, Smith began sexually targeting a male Rockwood student ("Student A") at Eureka High School with whom Smith desired to have a sexual relationship.

27. Smith began incessantly and inexplicably seeking out Student A while at school and in a way that the Appropriate Persons characterized as "creepy" and "inappropriate" in the context of child sexual abuse and sexual harassment.

28. Smith would routinely have lunch with Student A at school.

29. Smith would inappropriately physically touch and sexually caress Student A in ways that would constitute sexual harassment under Rockwood's and SSD's written policies.

30. Smith would seek opportunities to isolate Student A while at school and spend alone time with him so he could have sexual conversations and engage in grooming[1] of Student A.

31. Smith also exchanged personal cell phone numbers with Student A and began communicating with Student A on their respective personal cell phones on a daily, or nearly daily, basis, often communicating outside of school hours, including at nighttime.

32. Smith would discuss sex and sexuality (including Smith's own sexuality) with Student A, including times when Smith was caressing Student A.

33. Smith was giving Student A rides to and/or from school in Smith's personal vehicle.

34. Smith attempted to entice Student A into a homosexual relationship.

35. Student A has stated that Smith's conduct made him uncomfortable and "creeped him out" (which was meant in the context of a "child—sex predator" type of creepy).

36. All the above-described conduct was in direct violation of Defendants' written policies and constituted conduct that the Defendants' written policies denoted as constituting sexual harassment and sexual abuse, especially when coupled together, as well as violations of Defendants' written policies regarding appropriate staff and

[1] As it pertains to this Complaint, all references to "grooming" or "grooming behaviors" refer to a manipulative process whereby a perpetrator attempts to build trust with a child in order to commit acts of sexual abuse or sexual harassment.

student interactions/conduct, as well as communications with students and methods of communication with students.

37. Upon information and belief, the Appropriate Persons, including Corey Sink, Joseph Trimberger, Terry Clifton, Sarah Goodman, Jennifer Strauser, Christine Ude, Jennifer Ruocco, Abby Otten, and/or Stacy Neely, knew that Smith was engaging in such conduct while it was actively happening and knew such conduct constituted sexual harassment and sexual abuse.

38. Upon information and belief, one or more of the Appropriate Persons, including Smith's direct supervisors, Corey Sink, Joseph Trimberger, Terry Clifton, Sarah Goodman, Jennifer Strauser, Christine Ude, Jennifer Ruocco, Abby Otten, and/or Stacy Neely, personally witnessed the conduct and discussed it with Smith.

39. Upon information and belief, Appropriate Persons, including the aforenamed building principals, Smith's supervisors, superintendents, and human resources managers/specialists/coordinators/executives, including Corey Sink, Joseph Trimberger, Terry Clifton, Sarah Goodman, Jennifer Strauser, Christine Ude, Jennifer Ruocco, Abby Otten, and/or Stacy Neely, became even more aware when the misconduct was reported to such persons in Fall 2021, including to Corey Sink, Christine Ude, Abby Otten, Joseph Trimberger, Terry Clifton, Carmen Harris, and Stacy Neely, and they talked to Smith about it multiple times. These discussions included an October 2021 disciplinary notice meeting conducted by Smith's direct supervisor (Custodial Supervisor Joseph Trimberger) and Rockwood HR Specialist Abby Otten.

40. Upon information and belief, the sexual nature of Smith's relationship with Student A and Smith's acts of sexual harassment were discussed at the October 2021 meeting based upon the Defendants' written policies defining sexual abuse and sexual harassment, as well as types of conduct that constitute sexual abuse and sexual harassment.

41. Upon information and belief, instead of fully documenting the matter and instituting corrective measures, Appropriate Persons, including Smith's direct supervisor (Custodial Supervisor Joseph Trimberger) and Rockwood HR Specialist Abby Otten (with the knowledge and consent of Rockwood's HR directors/executives/supervisors, including Stacy Neely, and Defendants' building principals, including Corey Sink, Christine Ude, Sarah Goodman, and/or Jennifer Strauser), conspired to mischaracterize the incidents. Rather than characterizing the incidents as acts of sexual abuse and sexual harassment, Appropriate Persons instead characterized the incidents as Smith merely having taken a photograph of students and having discussed it with the student to whom he gave a ride home (Student A). Appropriate Persons' only responsive action was to instruct Smith that he should not be discussing student matters with other students. However, Appropriate Persons knew they were mischaracterizing the incidents and that, in truth, the situation entailed acts of child sexual abuse and sexual harassment. Appropriate Persons intentionally concealed and characterized Smith's conduct differently to give the illusion that the situation was innocent and to prevent the sexual abuse and sexual harassment from being accurately documented. The

attempt to conceal the truth was documented by a written disciplinary notice/investigation by Smith's direct supervisor (Custodial Supervisor Joseph Trimberger) and Rockwood HR Specialist Abby Otten, with the approval of Rockwood HR executives/directors/personnel. The mischaracterization/explanation also made no sense because Defendants are aware that their staff routinely, and without punishment or accusation of policy or conduct violations, take pictures of students, discuss the pictures, and discuss students with other students.

42. Upon information and belief, shortly before and after the October 2021 meeting with Smith, the SSD and Rockwood superintendents (including Tim Ricker) and building principals and administrator (Corey Sink, Christine Ude, Jennifer Strauser, and/or Sarah Goodman), as well as Rockwood's HR directors/executives (including Stacy Neely), and other Appropriate Persons, openly discussed the matter with each other, including the sexual harassment component and bodily-integrity rights violations component of the matter and their concerns about such conduct by Robert Smith.

43. Smith's direct supervisor (Custodial Supervisor Joseph Trimberger) and Rockwood HR Specialist Abby Otten's response/conduct, including that of the other Appropriate Persons, including superintendents (including Tim Ricker), and Corey Sink, Christine Ude, Jennifer Strauser, Stacy Neely, and/or Sarah Goodman, who were aware of the handling of the October 2021 meeting with Smith and the nature of Smith's interactions with Student A, including the sexual harassment components and bodily-integrity rights violations of it, constituted deliberate

indifference to known acts of Smith's sexual harassment and sexual abuse of children, concealment of the true nature of that abuse and a failure to institute any corrective measures.

44. Upon information and belief, after realizing that the Appropriate Persons, including the Custodial Supervisor and Rockwood HR Specialist, would essentially cover for him and help conceal his acts of child sexual harassment and sexual abuse, Smith became far more emboldened to continue engaging in such acts because he knew the Defendants and Appropriate Persons might help him continue to conceal it.

45. Upon information and belief, thereafter, Smith continued to engage in the exact same conduct with other students, including increasing the number of students with whom he exchanged personal cell phone numbers, increasing the number of students with whom he communicated with by cell phone, increasing the number of sexual conversations with students, increasing the number of students he would socialize with, including in sexually flirtatious ways, and increasing the number of students whom he would caress in a sexual manner and touch inappropriately in ways that constituted sexual harassment and sexual abuse under Defendants' own written policies. Smith did so openly and obviously in front of Appropriate Persons, including Christine Ude, Corey Sink, Jennifer Strauser, Sarah Goodman, Joseph Trimberger, Terry Clifton, and/or Jennifer Ruocco, as well as SSD personnel Jessica Bolzenius, Gregory Rieken, and/or Marcie Dawson, and the Appropriate Persons knew he was engaging in such conduct.

46. Despite knowing that Smith continued to engage in such conduct and that it was spreading even more widely amongst the student body, the Appropriate Persons, including building principals Christine Ude, Corey Sink, Jennifer Strauser, and Sarah Goodman and Smith's direct supervisors (Custodial Supervisor Joseph Trimberger and Terry Clifton) and Rockwood's HR Department (including Stacy Neely and Abby Otten), did nothing in response to stop such conduct.

47. Upon information and belief, Appropriate Persons, including Corey Sink, Sarah Goodman, Tim Ricker, Elizabeth Keenan, Christine Ude, Jennifer Strauser, Joseph Trimberger, Terry Clifton, and/or Jennifer Ruocco, knew of additional acts of sexual harassment and sexual abuse that Smith engaged in with other students prior to February 11, 2022 and during his employment beginning in 2018.

48. Smith's inappropriate physical contact with Student A and numerous other students constituted violations of each respective student's constitutional due process right to bodily integrity and constitutional right to be free of unreasonable bodily seizures.

49. Upon information and belief, between 2018 and February 11, 2022, Appropriate Persons, including Corey Sink, Christine Ude, Jennifer Strauser, Sarah Goodman, Joseph Trimberger, Terry Clifton, Abby Otten, Stacy Neely, and/or Jennifer Ruocco, witnessed Smith engaging in such constitutional violations of bodily integrity when he would repeatedly caress students at school in a sexual manner.

50. Again, Appropriate Persons, including Corey Sink, Christine Ude, Jennifer Strauser, Sarah Goodman, Joseph Trimberger, Terry Clifton, Abby Otten, Stacy

Neely, and/or Jennifer Ruocco, did nothing to stop such repeated constitutional violations by Smith.

51. Over the course of Smith's role as a state actor, employee, and agent for Defendants from approximately 2018-2022, numerous Appropriate Persons, including Smith's direct supervisors (Custodial Supervisor Joseph Trimberger and Terry Clifton), building principals Christine Ude, Corey Sink, Jennifer Strauser, and/or Sarah Goodman, and/or SSD personnel Marcie Dawson characterized numerous and repeated instances of Smith's conduct toward students as being inappropriate, making them uncomfortable, and/or being "creepy" – all within the context of a "child—sex predator" type of creepy (i.e., inappropriate and/or uncomfortable).

52. Smith's interactions with Student A constituted such obvious sexual harassment and sexual abuse to Defendants and Appropriate Persons that, in the context of a later sexual abuse and child abuse investigations by government agencies and/or law enforcement inquired of Defendants and Appropriate Persons whether there had been any similar incidents between Smith and any other students, numerous Appropriate Persons immediately cited the incidents with Student A. The Appropriate Persons included Smith's direct supervisors (Custodial Supervisor Joseph Trimberger and Terry Clifton) and upon information and belief, Defendants' building principals.

53. Upon information and belief, during the 2021-2022 academic year and prior to February 11, 2022, SSD personnel Sarah Duvernell, Marcie Dawson, Gregory

Rieken, and Jessica Bolzenius were reporting concerns to Jennifer Ruocco and Christine Ude about Smith, Smith's incessant touching of students, including bodily integrity rights violations, his "creepy" and "inappropriate" conduct with students, including SSD students and Plaintiff, and that such conduct was "creepy" and inappropriate" in the context of a child sex predator, and such conduct was making them "uncomfortable" with Smith being around students and children.

54. Upon information and belief, after October 2021 but prior to February 11, 2022, the nature of Smith's interactions with Student A, including the sexual components and bodily integrity rights violations, as well as the concerns about Smith's inappropriate and creepy interactions with students including bodily integrity rights violations that were noted by SSD personnel, as detailed *supra*, were reported to Rockwood superintendents, including Tim Ricker, and SSD superintendents, including Elizabeth Keenan, yet nothing was done in response to Defendants' superintendents being informed of Smith's conduct.

55. During the 2021-2022 academic year, Plaintiff attended Eureka High School as a student of Rockwood and SSD. During the 2021-2022 academic year, Plaintiff was targeted and repeatedly abused by Perpetrator.

56. Smith began sexually harassing Plaintiff and engaging in bodily integrity rights violations against Plaintiff as early as Fall 2021, including at Defendants' football games, in the school halls, in the school classrooms, in school bathrooms and at school lunches.

57. Smith's Fall 2021 sexual harassment of Plaintiff included repeatedly caressing Plaintiff at school and at school events, including at a football game.

58. In Fall 2021, Plaintiff's parents encountered Smith for the first time at a Rockwood football game. Smith came up to Plaintiff and hugged him in an unusually intimate way that caused Plaintiff's parents to take notice. Smith's conduct struck Plaintiff's parents as strange and confusing, especially given that Defendants had instituted COVID-19 protocols expressly prohibiting such physical contact. At least one Appropriate Person, a building principal, Christine Ude, Jennifer Ruocco, Corey Sink, Jennifer Strauser, and/or Jessica Bolzenius, and/or Tabatha Hoffmeyer, directly witnessed the incident.

59. The "Football Game Hugging/Caressing Incident" stood out in Plaintiff's mother's mind to such a degree that when she and Plaintiff's father were contacted by Defendants in February 2022 about the molestation of Plaintiff, she immediately stated her belief that this employee (Smith) was the perpetrator when Defendants refused to identify the perpetrator, which was indeed Smith.

60. Upon information and belief, Smith's Fall 2021 sexual harassment and bodily integrity rights violations were witnessed by Appropriate Persons, including Corey Sink, Joseph Trimberger, Terry Clifton, Christine Ude, Sarah Goodman, Jennifer Strauser, Jennifer Ruocco, and/or Sarah Duvernell.

61. Smith's Fall 2021 sexual harassment and repeated bodily liberty violations of Plaintiff were occurring on nearly a daily basis and continued on nearly a daily basis until February 11, 2022.

62. Smith's sexual harassment, sexual abuse, and physical contact / bodily liberty violations of Plaintiff consisted of:

    a. Multiple acts of molestation, including grabbing and rubbing Plaintiff's genitals in January 2022 and February 11, 2022, as well as a third incident of molestation that Plaintiff has stated happened in the 2021-22 academic year but thus far has not communicated the specific date due to his disabilities;
    b. Sexual comments;
    c. Sexual touching and caressing;
    d. Incessant intimate hugs;
    e. Isolating Plaintiff and taking him into bathrooms so Smith could physically and sexually abuse him in the bathroom;
    f. Sitting with Plaintiff at lunch and caressing Plaintiff, including under the table where Smith would molest Plaintiff;
    g. Discussing his sexuality with Plaintiff;
    h. Physical touching;
    i. Inappropriate physical contact;
    j. Touching Plaintiff's genitals; and
    k. Inappropriate sexual conduct; and
    l. Repeatedly grabbing Plaintiff, including intimate areas of his body.

63. In January 2022, Smith went up to Plaintiff while Plaintiff was eating lunch and sat next to him. Smith pretended to be socializing and eating lunch with Plaintiff,

despite having been informed that such conduct was inappropriate and causing reports of Smith violating rights of students, including sexual harassment, by Appropriate Persons, including Joseph Trimberger, Abby Otten, Stacy Neely, Corey Sink, Jennifer Strauser, Sarah Goodman, Terry Clifton, and/or Christine Ude. Smith began caressing Plaintiff, moved his hand under the table to Plaintiff's lap, and then began grabbing Plaintiff's genitals. Numerous Appropriate Persons, including Defendants' building principals and/or Smith's direct supervisors (Custodial Supervisor Joseph Trimberger and Lead Custodian Terry Clifton), were present and witnessed the matter. Yet, nothing was done to address this abuse and prevent further abuse.

64. Then, on February 11, 2022, Smith attended a Super Bowl party in the SSD classroom. Plaintiff was also at the party. Smith attended at the insistence of the SSD teachers Tabatha Hoffmeyer and Jennifer Ruocco, at least one of the building administrators (Christine Ude), and other SSD personnel in the classroom, including those previously referenced in this Complaint. At the Super Bowl party, Smith was intimately hugging and caressing numerous SSD students. Smith then located Plaintiff and started to intimately hug and caress Plaintiff. While hugging Plaintiff, Smith moved his hand to Plaintiff's genitals and began rubbing his penis for approximately 30 seconds or more (according to Sarah Duvernell, one of the Appropriate Persons present who witnessed the molestation).

65. After Appropriate Persons witnessed and/or became aware of Smith's February 11th molestation of Plaintiff, Smith's direct supervisor (Custodial Supervisor Joseph

Trimberger) attempted to convince other Appropriate Persons, including building principals and Rockwood's HR Department (including HR Coordinator Stacy Neely) ***not*** to report the matter to law enforcement. This was evidence of the Custodial Supervisor's furtherance of the Appropriate Persons' continued efforts to cover up and conceal Smith's sexual abuse, physical abuse, and sexual harassment of students.

66. Smith has admitted and/or testified under oath to the following facts regarding his interactions with Plaintiff:

    a. Smith was physically and sexually attracted to Plaintiff for months prior to the final act of molestation on February 11, 2022;

    b. Smith began grooming Plaintiff for sexual conduct for an extended period of time, including months prior to the last incident of molestation on February 11, 2022;

    c. Smith targeted Plaintiff because of his disabilities and Plaintiff's inability to communicate the physical and sexual abuse as a by-product of Plaintiff's disabilities;

    d. Smith's grooming behavior occurred in front of numerous Appropriate Persons, including his direct supervisor (Custodial Supervisor), building principals, Defendants' superintendents, and SSD teachers;

    e. Smith caressed, hugged, and rubbed Plaintiff in a sexual manner and for purposes of sexual gratification, including instances in front of

Appropriate Persons, including his direct supervisor (Custodial Supervisor), building principals, and SSD teachers;

f. Smith was encouraged by Defendants and Appropriate Persons, including building principals, his direct supervisor (Custodial Supervisor), and SSD teachers, to seek out and interact with Plaintiff and other SSD students in ways which facilitated the above-referenced abuse.

67. As a result of Perpetrator's abuse, Perpetrator was arrested and criminally charged with numerous sex crimes, including Sexual Abuse and Child Molestation. In April 2024, Smith pled guilty to, admitted under oath to, and was found guilty beyond a reasonable doubt of committing the child sex offense of Child Molestation against Plaintiff in February 2022. Such a plea and conviction was part of a plea agreement in which the prosecution agreed to dismiss the charges related to the January 28, 2022 incident and other incidents of child molestation committed against Plaintiff.

68. Two of the Perpetrator's motivating factors behind the abuse, sexual abuse, sexual harassment, bodily integrity violations, discrimination, and his wrongful conduct directed at Plaintiff were Plaintiff's sex and disabilities.

69. On at least two specific dates (January 28, 2022 and February 11, 2022), Perpetrator committed acts of Sexual Abuse and Child Molestation.

70. Smith also committed at least one other act of child molestation and/or sexual abuse against Plaintiff in the 2021-2022 academic year, but Plaintiff has not yet been able to verbalize exactly when due to his disabilities.

71. On January 28, 2022, Perpetrator sexually abused Plaintiff by purposefully touching and rubbing Plaintiff's genitals through his clothing.

72. Prior to February 11, 2022, Perpetrator would inappropriately touch Plaintiff in a sexually suggestive manner in front of numerous SSD and Rockwood employees and Appropriate Persons, including Christine Ude, Jennifer Ruocco, Tabatha Hoffmeyer, Marcie Dawson, Sarah Duvernell, Corey Sink, Sarah Goodman, Jennifer Strauser, Joseph Trimberger, Terry Clifton, and/or others.

73. During the 2021-2022 academic year, Perpetrator would make repeated efforts to seek out Plaintiff while Plaintiff was at Rockwood and SSD. SSD and Rockwood Appropriate Persons were aware that the Perpetrator would seek out Plaintiff, including finding that such conduct was "creepy" and/or "inappropriate" as in the context of child sexual abuse.

74. During the 2021-2022 academic year, Perpetrator became bizarrely and inappropriately fascinated with Plaintiff, including touching him, groping him, and taking him into bathrooms at SSD and Rockwood.

75. Notably during this time period, COVID-19 protocols were implemented by Rockwood and SSD for the purposes of limiting and/or eliminating physical contact amongst persons at Rockwood and SSD, including Plaintiff and Perpetrator. Perpetrator's conduct repeatedly and routinely defied and violated the COVID-19 protocols. SSD and Rockwood Appropriate Persons, including building principals and administrator Christine Ude, Corey Sink, Jennifer Strauser, and/or Sarah Goodman and Custodial Supervisor Joseph Trimberger and Lead Custodian Terry

Clifton, with authority to take disciplinary action were aware that the Perpetrator was making inexplicable and inappropriate physical contact with Plaintiff in violation of the aforesaid protocols and did nothing to prevent said violations.

76. All of Perpetrator's conduct as described herein was done at Rockwood and SSD, including in front of numerous Rockwood and SSD Appropriate Persons. Some, if not all, of the Rockwood and SSD Appropriate Persons had the administrative authority to institute corrective measures to correct Perpetrator's behavior, reprimand Perpetrator, discipline Perpetrator, implement actions to stop Perpetrator from committing such acts, institute corrective measures to prevent further abuse of students, including Plaintiff, and/or to protect Plaintiff from Perpetrator's ongoing abuse.

77. Prior to the abuse of Plaintiff, and by at least September and October 2021, Rockwood and SSD were aware that Perpetrator was carrying on inappropriate relationships with students, discussing sexual matters with students, inappropriately communicating with students, and having inappropriate physical contact with students.

78. Appropriate Persons with the authority to discipline Perpetrator at Rockwood and SSD knew of Perpetrator's conduct, including the ongoing sexual abuse of Plaintiff, but refused to take any remedial actions to prevent the further abuse of Plaintiff and other students.

79. The January 28, 2022 incident during which Perpetrator sexually abused Plaintiff occurred in front of Rockwood and SSD Appropriate Persons (including Defendants'

building principals and Smith's direct supervisors Joseph Trimberger and Terry Clifton) with the authority to take disciplinary action against Perpetrator prior to his later sexual abuse of Plaintiff on February 11, 2022, but no disciplinary or remedial action was taken and Perpetrator remained an active presence at school and continued to target Plaintiff with nearly daily bodily integrity violations, sexual abuse, and child abuse.

80. Despite the January 28, 2022 incident occurring in front of Appropriate Persons, including building principals, the Custodial Supervisor and the Lead Custodian, they did not report it to law enforcement or to Department of Social Services – Children's Division prior to February 11, 2022 (nor did they take any other remedial action whatsoever).

81. On February 11, 2022, after watching Plaintiff be molested for approximately 30= seconds in a Rockwood and SSD classroom in front of numerous staff and teachers, an employee finally reported Perpetrator's abuse of Plaintiff to law enforcement, and the Department of Social Services was thereafter finally notified.

82. Despite having actual knowledge of Perpetrator's prior sexual misconduct and disturbing behavior towards Plaintiff and other students, including Student A, Rockwood and SSD Appropriate Persons with the authority to take disciplinary action continued to allow Perpetrator to work at Rockwood and SSD, and to have access and interactions with Rockwood and SSD students, including Plaintiff, when such persons easily could have taken action that led to the prohibition of Perpetrator

being around the school or students by reporting the matter to Department of Social Services Children's Division Child Abuse & Neglect.

83. In addition to Perpetrator being arrested and criminally charged with numerous sex crimes, including Sexual Abuse and Child Molestation, on May 22, 2022 Perpetrator was found by the Missouri Department of Social Services to have committed child sexual abuse and neglect pursuant to Sec. 210.110-210.165 RSMO, 13 CSR 35-31.010 et seq. That finding subsequently became final and Perpetrator was listed on the Central Registry on December 5, 2022 and remains on such registry.

84. Rockwood and SSD were consciously aware that members of the mentally/cognitively-disabled community, special needs community, and especially the Down Syndrome community, are more targeted and susceptible to sexual abuse and violations of their physical body.

85. Rockwood and SSD were deliberately indifferent to the rights of students, including Plaintiff, when it continued to allow Perpetrator to be around students, including Plaintiff, and even encouraging and facilitating the inappropriate types and levels of conduct. Rockwood and SSD failed and/or refused to take any remedial action to stop Perpetrator's abuse, sexual harassment, and bodily integrity rights violations, especially after September and October 2021 and the matters with Student A.

86. At all times relevant hereto, Rockwood and SSD were (and employed) policymakers and/or administrators, including Appropriate Persons, who had a duty to train (yet failed to train) administrators, employees, staff, students, and parents concerning sexual discrimination, disability discrimination, and harassment against

students, concerning Title IX, and/or concerning employee-against-student sexual misconduct/harassment, appropriate student-staff relations, appropriate staff conduct, and in identifying, investigating, reporting, and stopping sexual harassment of students like Plaintiff and discrimination of Plaintiff based upon his sex and disability.

87. As a direct and proximate cause of Defendants' conduct, Plaintiff suffered the following damages:

    a. Physical pain and/or injury;
    b. Pain and suffering;
    c. Emotional distress, including fear and anxiety;
    d. Regression in his social, academic and vocational abilities;
    e. Significant, unprecedented impairments in his expressive communication; and
    f. Economic damages, including treatment costs.

88. As a direct and proximate cause of Defendant Rockwood's and SSD's conduct, Plaintiff will suffer the following damages in the future:

    a. Emotional distress, including fear and anxiety;
    b. Regression in his social, vocational and communication abilities; and
    c. Economic damages, including treatment costs.

89. Rockwood's and SSD's conduct deprived Plaintiff of educational benefits and his right to a public education.

90. Defendants failed to adequately train its staff and administrators in relation to the following topics:

a. How to properly supervise children to protect them from abusers, grooming behaviors, and dangers of such persons;

b. Sexual abuse;

c. Sexual harassment;

d. Disability discrimination;

e. Child abuse and neglect;

f. Appropriate and inappropriate staff-student interactions, relationships, and conduct;

g. Recognizing sexual harassment, including the warning signs thereof;

h. Recognizing sexual abuse, including the warning signs thereof;

i. Recognizing child abuse, including the warning signs thereof;

j. Recognizing disability discrimination, including the warning signs thereof;

k. Recognizing grooming and related non-physical sexual abuse;

l. Recognizing inappropriate staff-student interactions, relationships, and conduct;

m. How and when to report sexual harassment, sexual abuse, child abuse, disability discrimination, grooming behaviors, and inappropriate staff-student interactions/relationships/conduct;

n. Who to report such conduct to, including entities/persons outside Defendants' organizations such as hotlines, law enforcement, and outside government agencies or personnel.

o. Protections under Missouri law for reporting such conduct internally (i.e., above your direct supervisors) and protections under Missouri law for reporting such conduct externally, including when supervisors/administrators and/or Defendants fail to address matters;

p. Properly reporting and disciplining conduct which violates school policies for body integrity, personal space and proper social distancing;

q. Internal protections for parties reporting such conduct;

r. How those who fail to report suspicions, concerns, and instances of such conduct will be disciplined;

s. The importance and necessity of all concerns and suspicions of such conduct being documented in writing;

t. How to document suspicions of (and known instances of) sexual harassment, sexual abuse, child abuse, disability discrimination, grooming behaviors, and inappropriate staff-student interactions, relationships, or conduct;

u. Mandated reporting in the context of child abuse and neglect, including the Missouri law components of it, the necessity of reporting even suspicions of child abuse or neglect, the legal liability of not reporting, the legal

immunities to persons who make reports, and the anonymity/confidentiality of the reporting party;

v. Investigating instances and suspicions of physical abuse, sexual abuse, harassment, and discrimination, including how and who should interview children who were potentially exposed to such conduct;

w. The increased targeting, vulnerability and susceptibility of the special needs, cognitively disabled, physically disabled, and intellectually disabled community to harassment, discrimination, non-physical abuse, physical abuse, sexual abuse, and sexual harassment;

x. The increased targeting, vulnerability and susceptibility of those with Down Syndrome to harassment, discrimination, non-physical abuse, physical abuse, and especially sexual abuse and sexual harassment;

y. Inappropriate types and methods of communicating with students, including by personal cell phone, as well as communications outside of school hours and about personal matters;

z. The prevalence of, including the data and statistics showing the prevalence of, child abuse, child sexual abuse, and abuse of members of the special needs / disabled community;

aa. The prevalence of (including the data and statistics showing the prevalence of) children not reporting/disclosing that they are being abused or the abuse of their peers; and

bb. Defendants' written policies, if any, pertaining to such topics.

91. Defendants' training, or lack thereof, left Defendants' personnel without the proper knowledge of what constituted sexual abuse, grooming, sexual harassment, and child abuse. It further left them without knowledge of the dire importance of erring on the side of caution in reporting policy violations and/or suspicious incidents instead of giving the benefit of the doubt to a potential abuser.

92. Defendants' training on topics relating to sexual abuse and harassment consists of an approximately 30-minute video created by an out-of-state company. The video lacks any focus on Missouri law. The video is below the level of even basic or rudimentary training and is followed by a quiz that could be passed with no experience or training on the topics at all. The video is not on par with the industry standards for training on such topics, which includes hours, if not days, of training and active instruction wherein instructors directly engage with the trainees (as opposed to a video that trainees merely engage with passively, if at all). Defendants knew the training video was inadequate but instead chose it (and continue to use it even after the events described in this Complaint) – Defendant SSD even abandoned a more comprehensive and intensive training course in lieu of it -- because their liability insurers select it and give them a discount on their insurance rates if the Defendants use such a training video. The video fails to address common grooming behaviors, the surreptitious nature of child predators, the necessity for documenting and immediately addressing concerns that could be considered grooming, and vigilantly protecting children.

93. Defendants fail to even confirm or enforce that trainees and staff actually watch the above-referenced video. Instead, Defendants merely confirm (at times) if a staff member has passed the simple "quiz" while failing to address low quiz scores or scores that fail to reflect a full understanding of the already rudimentary, basic, and lacking information contained in the short video.

94. For example, to the extent Smith truly even watched the video or underwent such video "training", his scores on the "quiz" generally decreased year after year despite being low initially and demonstrating a lack of full understanding of even the rudimentary, basic, and lacking information in the video. Yet, in spite of these clear, repeated warning signs, nothing was done by Defendants in response to this known lack of understanding and his low score trend.

95. The "training" (or lack thereof) by Defendants does not inform staff about the nuances of grooming, the warning signs of sexual abuse, the dangers of brushing off grooming behaviors as innocent, or the dangers of giving a person engaging in grooming behaviors the benefit of the doubt (which is a mentality that abusers rely upon in order to keep preying upon children).

96. Defendants' choice to adopt the inadequate video as their only source of training was done not because the training was adequate, but because Defendants' liability insurers gave them a substantial discount on premiums and/or increased insurance coverage benefits if Defendants used the video as the training. While Defendants knew it was inadequate and, upon information and belief, would routinely mock the low quality of the training, Defendants prioritized the financial benefits of the

"training" over obtaining actual knowledge for its staff on the topics the training was supposed to and should have thoroughly covered, but did not. Defendants knew they were fully capable of procuring additional and/or far superior training needed to protect students like Plaintiff, but just would not get the same financial incentives from their liability insurers, so the Defendants voluntarily chose to do nothing instead.

97. The lack of adequate training left Defendants' employees without adequate knowledge of how to immediately recognize Smith's grooming, harassment, and abuse of Plaintiff, as well as the important and dire need to immediately report such concerns (especially the Appropriate Persons and employees with concerns about Smith's "creepy" and "inappropriate" conduct with students that made Appropriate Persons and employees "uncomfortable"). This caused Defendants' Appropriate Persons to lack vigilance when it came to disciplining Smith (including the situation with Student A), and had the effect of facilitating and even encouraging Smith's abuse of Plaintiff.

98. The lack of adequate training left Defendants' employees, including Appropriate Persons involved in the October 2021 discipline of Smith, without the knowledge to properly investigate matters involving Smith and students (including Student A), understand the severity of the conduct by Smith, the level of danger posed by Smith's interactions with students (and the amount of danger he posed moving forward), the obvious nature of the grooming behaviors Smith was engaging in, and the predictable progression and trajectory of intensity of the grooming and bodily

integrity rights violations into full physical sexual abuse and therefore caused the sexual abuse of Plaintiff, including the February 11, 2022 molestation.

99. If Defendants had adequate training, Smith would have been terminated long before February 11, 2022. He certainly would have been terminated in Fall 2021, October 2021, or January 2022, including due to the situation with Student A that was known to Defendants and Appropriate Persons.

100. Defendants were also aware of their training inadequacies based on the number of times that child abuse, sexual abuse, and sexual harassment incidents occurred at Defendants' Districts in recent history. This was documented by the recent Department of Justice investigation into SSD, which uncovered a pattern of years of systemic physical abuse of children by SSD staff. Numerous Rockwood staff have been charged and/or investigated for child sex offenses in recent history, including coaches/employees at Rockwood's high schools.

101. Defendants were also aware that their training was inadequate in relation to reporting procedures and the importance thereof because numerous investigations into sexual abuse and child abuse resulted in a determination that Defendants' employees had seen signs of abuse and had a reasonable suspicion of child abuse, but nonetheless did not report these signs and/or suspicions to any legal entity (or anyone else).

102. Industry-standard adequate training on the topics listed takes many hours and/or days to conduct. It includes specialists in child abuse and child sexual abuse as the trainers, who directly interact with the trainees. Defendants' 30-minute video

"training" did not remotely reflect adequate training for a school environment filled with children, especially disabled children such as Plaintiff.

103. Defendants' lack of training left Defendants' employees unequipped and without proper knowledge about how and when to speak out about sexual abuse, child abuse, and warning signs of such abuse (including grooming behaviors), which in turn led to a culture/environment where such conduct could continue to occur. This lack of training directly led to the prolonged abuse of Plaintiff by Smith.

104. Defendants' lack of training left Defendants' staff without the knowledge to know how to act in relation to Smith's bodily integrity rights violations and sexual harassment/abuse, including the increase in his misconduct after the October 2021 meeting with Joseph Trimberger and Abby Otten, as well as his targeting of Plaintiff. It left them without any knowledge as to how to get the abuse to stop, what to do, and who else to involve in the situation.

105. Defendants were on notice that the trainings were needed and inadequate due to the prevalence of child abuse and sexual abuse within their Districts, but also due to repeated letters and "Dear Colleague" letters sent to them by the United States Department of Education at numerous points over the last 20+ years which warned Defendants about the prevalence and prominence of child sexual abuse within the educational setting and that such abuse was being committed by educators, the need for increased trainings, and the need for vigilance to prevent

such conduct. Despite such letters and notices, Defendants made no materials changes, if any, to their training regimen on the relevant topics.

## OTHER EVIDENCE IN EXCLUSIVE CONTROL OF DEFENDANTS[2]

106. Upon information and belief, from 2018-2022, Smith engaged in numerous acts of right-to-bodily-integrity violations against Rockwood and SSD students as well acts of sexual harassment or abuse.

107. Upon information and belief, Rockwood and SSD have employed numerous staff members who have engaged in acts of sexual harassment, child abuse, and/or sexual abuse, including acts committed against students, which discovery will show amounts to a widespread and systemic problem and/or pattern.

108. Upon information and belief, Defendants' employees, including numerous Appropriate Persons, mock the 30-minute "training" video for being so obscenely below industry-standard and uninformative that it amounts to a "joke", which discovery will show (as well as reveal other internal criticisms of the video).

109. Defendants are in exclusive possession of the full breadth of such information. Plaintiff is currently unable to obtain it for pleading purposes due to

[2] Requiring the pleading of specific facts that are in the exclusive control of defendants, at this stage, would require plaintiffs to put forth such evidence "before they have a fair opportunity to obtain it." *Murphy v. Schmitt*, 143 F.4th, 914, 919 (8th Cir. 2025). "If plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by [the statute] will suffer." *Id.*, (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 589 (8th Cir. 2009).

protections the Defendants enjoy under the Family and Education Records Privacy Act ("FERPA") and employee/personnel record confidentiality laws.

**COUNT I – VIOLATION OF TITLE IX**

110. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

111. Plaintiff had federal civil rights secured by federal statute, namely Title IX of the Education Amendments of 1972, which provides in pertinent part that "[N]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

112. Title IX was intended to benefit Plaintiff and other students like Plaintiff.

113. Title IX provides Plaintiff, and students like Plaintiff, clear federal civil rights, which are not amorphous or vague, to be free from known sexual and disability discrimination at school.

114. Title IX imposes binding mandatory obligations on schools like Rockwood and SSD, who are recipients of federal funding, which prohibits them from discriminating against students on the basis of sex or disability.

115. As set forth *supra* in the Introduction, prior to the abuse of Plaintiff, multiple Rockwood and SSD Appropriate Persons had actual knowledge of Perpetrator's sexual harassment, sexual abuse, and/or sexual discrimination of Plaintiff and other students, and discrimination of persons based upon disability.

116. Plaintiff suffered repeated incidents of sexual abuse and disability discrimination by Perpetrator, which denied him access to educational opportunities and benefits and is prohibited by Title IX.

117. As set forth *supra* in the Introduction, Rockwood and SSD Appropriate Persons with actual knowledge and/or notice of Perpetrator's sexual abuse of Plaintiff and other students prior to the February 11, 2022 incident (which was reported to the authorities) had the authority and ability to investigate and take meaningful corrective action to end or prevent the discrimination and harassment perpetrated upon students, including Plaintiff, by Perpetrator, but failed to do so.

118. Rockwood's and SSD's failures to investigate or take any corrective action, despite prior sexual harassment and ongoing sexual harassment by Perpetrator, were clearly unreasonable in light of the known circumstances.

119. Through their concealment actions and complete inaction to take corrective measures against Perpetrator, Rockwood and SSD were deliberately indifferent to the sexual harassment, sexual discrimination, disability discrimination, abuse, assault, and violence that Plaintiff suffered at Rockwood and SSD, which directly and proximately caused injury to Plaintiff.

120. Through their concealment actions and complete inaction to take corrective measures against Perpetrator, Rockwood and SSD created a climate in which sexual harassment, disability discrimination, abuse, and misconduct were tolerated, thus encouraging Perpetrator's repeated harassment and misconduct, including his actions against Plaintiff, which directly and proximately caused injury to Plaintiff.

121. As a result of Rockwood's and SSD's deliberate indifference, Plaintiff was subjected to repeated sexual abuse, sexual discrimination, and disability discrimination by Perpetrator.

122. Rockwood and SSD's deliberate indifference was a conscious choice in response to their knowledge of the Perpetrator's previous misconduct.

123. The sexual abuse inflicted upon Plaintiff was severe, pervasive, objectively offensive, and effectively barred Plaintiff from access to educational opportunities and benefits. Plaintiff even had to transfer schools as a result of the abuse.

124. The sexual abuse Perpetrator inflicted upon students and Plaintiff, along with Rockwood's and SSD's refusal to investigate or take appropriate action (in response to evidence, reports, and complaints of Perpetrator's prior abuse, sexual harassment, disability discrimination, and sexual discrimination) to stop Perpetrator from being able to harass Plaintiff effectively barred Plaintiff from access to educational opportunities, benefits, and activities. Plaintiff suffered severe damages, including emotional distress, economic damages, embarrassment, and fear.

125. By concealment actions and complete inaction to take corrective measures against Perpetrator, Rockwood and SSD operated with deliberate indifference toward the rights of students, and toward the rights of Plaintiff, to have a safe and secure educational environment, thus materially impairing Plaintiff's ability to pursue his education at Rockwood and SSD schools in violation of the requirements of Title IX. In fact, Rockwood and SSD discontinued prior training,

awareness and essential programming meant to protect individuals such as Plaintiff from such abuse.

126. Specifically, Rockwood and SSD violated Title IX by, *inter alia*:

a. Choosing to take no action to protect Plaintiff, despite the knowledge of a need to supervise, discipline, or take other corrective action to prevent Perpetrator's sexual abuse and harassment of students, including Plaintiff, and also failing to warn Plaintiff of the risk of abuse;

b. Choosing to take no action against Perpetrator to discipline or increase supervision of him after several instances of Perpetrator's inappropriate sexual misconduct;

c. Ignoring evidence, complaints, and reports regarding Perpetrator's sexual abuse and sexual harassment of students and Plaintiff, and being deliberately indifferent thereto;

d. Failing to conduct their own investigations into reports, complaints, and evidence that Perpetrator was sexually abusing and sexually harassing students prior to and during his harassment of Plaintiff and failing to conduct their own investigation into reports, complaints, and evidence that Perpetrator was continuously abusing and sexually harassing Plaintiff;

e. Improperly delegating their own educational and supervisory responsibilities to Predator, facilitating and encouraging Smith's repeated, extensive and inappropriate contact with Plaintiff;

f. Forcing Plaintiff to fend for himself and attempt to protect himself from Perpetrator's harassment/abuse with no assistance from Rockwood and SSD;

g. Protecting and advocating for Perpetrator and concealing Smith's policy violations and abusive behavior, despite multiple reports of Perpetrator's sexual and inappropriate misconduct with students prior to and during the period he harassed and abused Plaintiff;

h. Creating a climate that tolerated sexual harassment and other sexual misconduct, and that tolerated the complete disregard for reports, evidence, and complaints of sexual harassment/misconduct by employees, including Perpetrator, and being deliberately indifferent thereto;

i. Failing to develop or adopt policies and procedures to properly address complaints, reports, or evidence of employee-against-student sexual harassment, assault, misconduct, and violence;

j. Failing to adopt policies regarding prompt and equitable grievance procedures and investigation of reports, complaints, or evidence of employee-against-student sexual harassment, assault, misconduct, and violence;

k. Failing to provide policies, procedures, or training for Rockwood and SSD administrators, employees, students, and students' parents about sexual harassment and misconduct;

l. Failing to terminate or otherwise discipline Rockwood and SSD employees, including Perpetrator, for their willful disregard to students' and Plaintiff's safety and rights, and being deliberately indifferent thereto;

m. Failing to timely provide, offer, recommend, or coordinate adequate healthcare, psychological counseling, and academic assistance and services to Plaintiff after he was repeatedly abused and sexually harassed by Perpetrator, and being deliberately indifferent thereto; and/or

n. Through other actions, inaction, and deliberate indifference.

127. As a direct and proximate result of Defendant Rockwood's and SSD's conduct, Plaintiff suffered the following damages:

a. Physical pain and/or injury;

b. Pain and suffering;

c. Emotional distress; including fear and anxiety;

d. Regression in his social, academic and vocational abilities;

e. Significant, unprecedented impairments in his expressive communication; and

f. Economic damages, including treatment costs.

128. As a direct and proximate result of Defendant Rockwood's and SSD's conduct, Plaintiff will suffer the following damages in the future:

a. Emotional distress, including fear and anxiety;

b. Regression in his social, vocational and communication abilities; and

c. Economic damages, including treatment costs.

WHEREFORE Plaintiff respectfully request judgment in his favor and against Defendant Rockwood and SSD for compensatory damages for a fair and reasonable amount, for pre-judgment interest and post-judgment interest, for his attorneys' fees, for his costs herein incurred, and for such other and further relief as the Court deems just and proper under the circumstances.

**COUNT II – VIOLATION OF 42 U.S.C. § 1983**

129. Plaintiff restates all previous allegations as if fully set forth herein.

130. As set forth *supra* in the Introduction, prior to the abuse of Plaintiff and/or during the time period in which Plaintiff was abused, Rockwood and SSD Appropriate Persons with authority to take disciplinary action were on prior actual notice that Perpetrator and/or other Rockwood and/or SSD employees were sexually abusing and harassing students and violating students' constitutional due process right to bodily integrity and liberty, right to be free from discrimination based on sex, right to be free from discrimination based upon disability, and right to be free from unreasonable seizures.

131. Despite prior actual notice, Rockwood and SSD were deliberately indifferent to the rights of its students, including Plaintiff, and failed to take proper remedial action to cease the abuse of its students.

132. Rockwood's and SSD's failure to act and process of turning a "blind eye" to the abuse of students and bodily integrity violations of students, and Perpetrator's

civil rights violations and dangerous behaviors, demonstrated Rockwood and SSD's policy, practice, pattern, and/or custom of allowing employees to physically and sexually abuse and prey upon students, as well as violate the constitutional rights of students, including the following rights under:

a. Equal Protection Clause of the 14th Amendment to the United States Constitution (right to be free from discrimination based on sex);

b. Due Process Clause of the 14th Amendment to United States Constitution (right to bodily integrity and bodily liberty);

c. 4th Amendment to the United States Constitution (right to be free from unreasonable bodily seizures); and

d. Title IX (Right to be free from discrimination based upon sex and/or disability).

133. Rockwood and SSD failed to act upon reports of sexual abuse of students and bodily integrity rights violations of students.

134. Rockwood and SSD failed to act upon evidence of sexual abuse of students and bodily integrity rights violations of students.

135. Rockwood and SSD failed to investigate reports and/or evidence of sexual abuse of students and bodily integrity rights violations of students.

136. Rockwood and SSD failed to adequately train its employees.

137. Regardless of any written policies, Rockwood and SSD's pattern of conduct, including ignoring written policies, became the actual policies of each respective District, including ignoring sexual abuse and harassment, as employees not reporting

– and even actively concealing - concerns and suspicions of child abuse, inappropriate conduct, grooming, and harassment.

138. Rockwood and SSD set policies for employees and agents, including Perpetrator.

139. Perpetrator's conduct described herein constitutes the policies, customs, practices and usages of Rockwood and SSD.

140. Rockwood's and SSD's conduct described herein constitutes the policies, customs, practices and usages of Rockwood and SSD.

141. Rockwood and SSD failed to adequately train employees regarding abuse of students, including abuse of students by employees.

142. Rockwood and SSD Appropriate Persons with the authority to take disciplinary action and take or institute corrective and/or remedial measures failed to take any remedial and/or disciplinary action in response to evidence, complaints, incidents, and/or reports of abuse of students as well as bodily integrity rights violations committed against students.

143. Rockwood's and SSD's conduct amounts to deliberate indifference to the federal, civil, and Constitutional rights of Plaintiff and other students.

144. As a direct and proximate result of Rockwood's and SSD's conduct, including Rockwood's and SSD's deliberate indifference, policies/practices/customs, and/or inadequate training, Plaintiff suffered the following damages:

a. Physical pain and/or injury;

b. Pain and suffering

c. Emotional distress; including fear and anxiety;

d. Regression in his social, academic and vocational abilities;

e. Significant, unprecedented impairments in his expressive communication; and

f. Economic damages, including treatment costs.

145. As a direct and proximate result of Rockwood's and SSD's conduct, including Rockwood's and SSD's deliberate indifference, policies/practices/customs, and/or inadequate training, Plaintiff will suffer the following damages in the future:

a. Emotional distress, including fear and anxiety;

b. Regression in his social, vocational and communication abilities; and

c. Economic damages, including treatment costs.

146. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to an award of attorneys' fees.

WHEREFORE, Plaintiff prays for this Court to enter judgment in his favor and against Defendants Rockwood and SSD for compensatory damages for a fair and reasonable amount, for his costs associated with pursuing this action, for pre-judgment interest and post-judgment interest as allowed by law, for his attorneys' fees, and for any further relief this Court deems just and proper.

**COUNT III – MISSOURI HUMAN RIGHTS ACT VIOLATIONS**

147. Plaintiff restates all previous allegations as if fully set forth herein.

148. At the time of these matters, Rockwood had over 500 employees.

149. At the time of these matters, SSD had over 500 employees.

150. SSD and Rockwood failed to take proper and necessary steps to make the public accommodations free from sexual harassment, sexual discrimination, disability discrimination, and disability harassment.

151. SSD and Rockwood's acts and omissions in this matter are in violation of the Missouri Human Rights Act.

152. As a result of these matters, Plaintiff filed Charges of Discrimination with the Missouri Commission on Human Rights against Rockwood and SSD. As a result, Plaintiff was issued Right to Sue Letters/Notices against Rockwood and SSD. A true and accurate copy of such documents[3] are attached hereto as Exhibit #1.

153. Plaintiff incorporates all facts and allegations of Exhibit #1 into this Complaint as if fully set forth herein.

154. This action is timely filed based on the date of the Right to Sue Letters.

155. The aforementioned harassment/discrimination of Plaintiff affected a term and condition of Plaintiff's right to SSD's and Rockwood's public accommodations, including attending the public accommodations and receiving a public education. The aforementioned physical abuse, sexual abuse, sexual harassment, disability harassment, and/or discrimination upon the basis of sex

[3] The names of Plaintiff and his Legal Guardian have been redacted.

and/or disabilities and discrimination deprived Plaintiff of the benefits of the public accommodations, including his right to enjoy/use such accommodations free of sexual harassment, sexual abuse, physical abuse, and discrimination on the basis of sex and/or disability.

156. SSD and Rockwood refused to take necessary action to prevent the abuse, harassment and discrimination of Plaintiff, or to put a stop to the abuse, harassment and discrimination of Plaintiff.

157. As a result of SSD's and Rockwood's acts and omissions, Plaintiff suffered emotional distress, physical injury consistent with the abuse, emotional distress, and psychological trauma.

158. As a result of SSD's and Rockwood's acts and omissions, Plaintiff will continue to suffer emotional distress in the future and incur future treatment costs and economic damages.

159. Plaintiff is entitled to an award of his reasonable attorneys' fees.

WHEREFORE Plaintiff respectfully requests judgment in his favor and against Defendant Rockwood and SSD for compensatory damages for a fair and reasonable amount, for pre-judgment interest and post-judgment interest, for his attorneys' fees, for his costs herein incurred, and for such other and further relief as the Court deems just and proper under the circumstances.

**COUNT IV – DISABILITY DISCRIMINATION UNDER THE RA & THE ADA**

160. Plaintiff restates all previous allegations as if fully set forth herein.

161. The RA and the ADA prohibit recipients of federal financial assistance, such as Defendants, from engaging in discrimination against a disabled person on the basis of disability in connection with their public accommodations and in this situation the public educational environment and public premises.

162. Plaintiff's disabilities, Autism and Down Syndrome, are qualifying disabilities covered by the RA and ADA.

163. Rockwood and SSD receive federal financial assistance for their educational programs, including special education services.

164. Plaintiff was permitted to participate in Rockwood and SSD's educational programs.

165. As described *supra* in the Introduction, Defendants, including the Appropriate Persons (especially building principals, SSD teachers, Defendants' Superintendents, SSD's principal (also a building principal)) were aware of Plaintiff's disabilities.

166. As described *supra* in the Introduction, Defendants, through their Appropriate Persons, knew that Smith was targeting the SSD students (all with disabilities), especially Plaintiff, constantly seeking them out, constantly touching them and caressing them in a sexual manner, and engaging in bodily integrity rights violations and related policy violations, having inappropriate conversations with them, including of a sexual nature, and spending inexplicable inordinate amounts of time with them.

167. As described *supra* in the Introduction, Smith targeted Plaintiff, and sexually abused and sexually harassed him, because his disabilities rendered him unable to communicate his distress in the same manner as someone without a disability.

168. As described *supra* in the Introduction, Plaintiff was subjected to repeated physical and sexual abuse by Smith while attending Rockwood and SSD, which interfered with his participation in classroom instruction and education services and ultimately compelled him to withdraw from Defendants' Eureka Schools.

169. As described *supra* in the Introduction, Defendants were deliberately indifferent to the sexual abuse of Plaintiff and other students by Smith by actively concealing his acts of abuse known to Appropriate Persons and by failing to take any remedial action to correct his known and ongoing acts of abuse.

170. As a result of SSD's and Rockwood's acts and omissions, Plaintiff suffered emotional distress, physical injury consistent with the abuse, emotional distress, and psychological trauma he endured.

171. As a result of SSD's and Rockwood's acts and omissions, Plaintiff will continue to suffer emotional distress in the future and incur future treatment costs and economic damages.

172. Plaintiff is entitled to an award of his reasonable attorneys' fees.

WHEREFORE Plaintiff respectfully requests judgment in his favor and against Defendant Rockwood and SSD for compensatory damages for a fair and reasonable amount, for pre-judgment interest and post-judgment interest, for his attorneys' fees, for

his costs herein incurred, and for such other and further relief as the Court deems just and proper under the circumstances.

**PLAINTIFF DEMANDS TRIAL BY JURY**

***Respectfully Submitted,***

***THE O'BRIEN LAW FIRM, PC***

BY: /S/ Grant C. Boyd
Grant C. Boyd #67362
The O'Brien Law Firm
135 W. Adams Ave, Suite 200
St. Louis, MO 63122
(314) 588-0558
(314) 588-0634 FAX
boyd@obrienlawfirm.com

***Attorneys for Plaintiff***